IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,260

STATE OF KANSAS,
*Appellee*,

v.

JASON HACHMEISTER,
*Appellant.*

SYLLABUS BY THE COURT

1.

As a general rule, issues not raised before the district court cannot be raised on appeal.

2.

A reviewing court must determine the sufficiency of a search warrant affidavit from the four corners of the affidavit.

3.

Search warrants and their supporting affidavits are presumed valid, and one attacking their validity carries the burden of persuasion.

4.

Lifetime postrelease registration for sex offenders mandated by the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, does not constitute punishment for purposes of applying provisions of the United States Constitution or § 9 of the Kansas Constitution Bill of Rights.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 4, 2015. Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed June 16, 2017. Judgment of the Court of Appeals affirming the district court is affirmed on the issues subject to our review. Judgment of the district court is affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, argued the cause, and *Peter Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Jodi E. Litfin*, deputy district attorney, argued the cause, and *Michael F. Kagay*, district attorney, *Chadwick J. Taylor*, former district attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: A jury convicted Jason Hachmeister of 105 counts of sexual exploitation of a child after police discovered child pornography on his computer while investigating the homicide of Hachmeister's mother. On petition for review from a decision by a panel of the Court of Appeals, we consider two claims of error: (1) whether the evidence from Hachmeister's computer should have been suppressed because it was not properly within the scope of various search warrants issued during the homicide investigation; and (2) whether the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it made a factual finding that the victims were under 14 years old, which was a predicate finding required for ordering Hachmeister to register as a sex offender. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, Topeka police began investigating the death of Hachmeister's mother, whose body was found at her home where Hachmeister also lived. The police obtained six search warrants as the inquiry unfolded. The first five were for the homicide

2

investigation and the sixth was to search Hachmeister's computers for child pornography. Officers recovered more than 100 pornographic images of children, most of whom appeared prepubescent. Hachmeister unsuccessfully moved to suppress the photographs.

The jury convicted Hachmeister of 105 of the 108 counts of sexual exploitation on which the State tried him. The district court sentenced him to 86 months in prison. And after finding the images depicted victims 14 years old and under, the court ordered Hachmeister to submit to lifetime offender registration under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq*.

Hachmeister timely appealed, raising multiple issues including whether the district court erred refusing to suppress the images recovered from his computers and whether the registration requirement violates *Apprendi* because it was imposed based on a factual finding not submitted to a jury and proved beyond a reasonable doubt. A Court of Appeals panel affirmed. *State v. Hachmeister*, No. 112,260, 2015 WL 8175905, at *1 (Kan. App. 2015) (unpublished decision). We granted review of the panel's disposition of the suppression and *Apprendi* questions. Jurisdiction is proper. See K.S.A. 60-2101(b) ("[A]ny decision of the court of appeals shall be subject to review by the supreme court.").

It should be noted Hachmeister was convicted for the first-degree murder of his mother in a separate criminal proceeding, which is presently on appeal. See *State v. Hachmeister*, No. 114,796. His murder case is not part of this appeal.

NO ERROR AS TO THE CHALLENGED SEARCH WARRANTS

Investigating officers secured six search warrants during their months-long investigation. Four warrants are relevant to this appeal. Using the identifying labels for

3

the warrants adopted by the panel, the four relevant warrants and the searches or seizures pursuant to each that Hachmeister argues were illegal are: (1) SW-A, the seizure of a Gateway laptop; (2) SW-D, the seizure of a Lenovo laptop; (3) SW-E, the search of the Lenovo laptop; and (4) SW-F, the searches of both the Gateway and Lenovo laptops, resulting in the discovery of the pornographic images. We must consider these along with the district court's handling of three separate motions to suppress. This requires a more comprehensive factual recitation, including a chronological summary of each of the six warrants involved in this case.

*The search warrants*

*SW-A: September 10, 2011*

The affidavit supporting SW-A stated that Hachmeister had called 911 around 4:05 p.m. to report that he found his mother Sheila "deceased lying on the floor with a blood pool around the head and twine or small rope around her neck and a cut or gash on [her] forehead." He told police he last saw his mother the day before around 10:45 p.m. He said he left the house at approximately 11:30 a.m. the day of her death to run errands and heard her "moving around up stairs but did not physically see her." He also told police she had "been talking with a couple of gentlemen via her lap top computer." Relying on these statements, investigators secured SW-A, which authorized them to search Sheila's home and to seize her body and "any blood evidence, occupancy documents, any trace evidence, and bloody clothing, and cell phone(s), *computers*, twine or small rope." (Emphasis added.)

*SW-B:  September 10, 2011*

The affidavit supporting SW-B contained substantially the same statements but added, "AMR roll[ed] the victim over to check for signs of life . . . [and noticed] the victim was in full rigor but that does not occur until approximately twelve hours after death." The affidavit noted this was inconsistent with the timeline established by Hachmeister's earlier statements, so the affiant concluded, "Hachmeister is not telling the full truth about what has occurred to his mother and where he had been while driving his car earlier today." SW-B permitted the police to search Hachmeister and Sheila's cars for "[a]ny blood evidence, ownership documents, any trace evidence, any bloody clothing, twine or small rope."

*SW-C:  September 12, 2011*

The affidavit supporting SW-C included substantially the same recitations as SW-A and B but added that while executing SW-A, the police seized two Gateway computers:  a laptop owned by Hachmeister and a desktop that "could either be the victim's computer or used by both victim and son Jason." The affidavit further noted Hachmeister claimed the desktop belonged to him and had been removed from the basement but could not explain why it had been removed. SW-C authorized police to search both Gateway computers, another laptop, an external hard drive, and three flash drives for "[a]ny and all digital evidence including but not limited to email, internet searches, written documents, online chat, images."

*SW-D:  December 6, 2011*

A few months later, investigators requested the fourth warrant (SW-D). The affidavit supporting SW-D contained largely the same statements as the first three but

5

added new facts further implicating Hachmeister in his mother's murder. The affidavit stated in pertinent part:

"Throughout the duration of this investigation, JASON HACHMEISTER has become the suspect in his mothers' [*sic*] death. He has been caught changing his story . . . and . . . failed a Polygraph. Detectives have interviewed people who have had conversations with JASON in public business. JASON has bragged to them how he killed his mother and the Police think he is a 'stone cold killer[.'] While telling these people this, he would also say he was just kidding. . . .

"SHEILA had another son, [AARON] HACHMEISTER who is a Police Office [*sic*] with Lawrence Kansas. I have been in contact with him throughout this investigation. He advised me he is the executor of his mothers' [*sic*] . . . life insurance policy and informed them that JASON was the suspect in his mothers' [*sic*] death and told them not to pay out any money until the Police rule out JASON as a suspect . . . .

"The Topeka Capitol Journal received an anonymous letter post marked November 12, 2011. The anonymous person who wrote this letter claimed responsibility for the death of SHEILA . . . . The letter states that the suspect took a computer, cash and a purse; this information was not released to the public. The letter also states that after he killed her he took a shower in her room to get the blood off of him. This envelope was post marked from the Kansas City Area and had a commemorative MARK TWAIN stamp on it. The letter also advised he learned how to make a 'bump key' . . . . Instructions on how to make and use a 'bump key' can be found on the internet. . . . AARON [told the police] JASON was in Kansas City a few days prior to the post mark on the envelope. . . .

"On November 15, 2011 Crime Stoppers received an anonymous tip about this homicide. . . . The tip was that two men from Kansas City were the killers and that the victims' [*sic*] sons were not the suspects. . . .

6

"Both of these leads were received days after AARON told JASON that he would not get paid until the Police ruled him out as a suspect. . . . It is my belief that JASON sent both of these leads in an attempt to turn our attention to someone else so he can get the insurance money."

SW-D authorized a search of Sheila's home and Hachmeister's vehicle for such items as blood samples, DNA swabs, stationary matching the received letter, stamps matching the one on the letter, CSI photographs, computers and data storage devices, and handwritten documents.

*SW-E: December 13, 2011*

The affidavit supporting SW-E contained substantially the same facts as SW-D but added that police had seized Hachmeister's Lenovo laptop while executing SW-D. SW-E authorized a search of the Lenovo laptop for evidence of Sheila's murder, financial documents concerning reimbursement for the mother's death, IP addresses, evidence on crime scene staging, personal documents containing a description of the crime scene or murder, and evidence of any storage facilities Hachmeister had access to.

*SW-F: January 4, 2012*

Again, the supporting affidavit SW-F included largely the same facts as the previous affidavits, adding that while executing SW-E, detectives

"conduct[ed] a search of the internet history files as extracted using a forensic tool, they looked under searches for the requested terms. When a filter was applied to just locate general user-created search terms to look for terms related to the murder investigation . . . , the search results showed user-entered search terms that were indicative of child pornography. Terms such as preteen and childlove were located. Although noted, they

7

did not believe that the current warrant covered the location of child pornography graphic and movie files."

SW-F authorized police to search Hachmeister's Gateway and Lenovo laptops for evidence of child pornography, including internet searches, images, videos, files, communications, peer to peer software, and related searches. From this warrant, police discovered 177 images of children involved in sexually explicit activity on the Gateway laptop, which had been seized from Sheila's home pursuant to SW-A.

*The motions to suppress*

Hachmeister filed three motions to suppress. The first challenged only warrants SW-D and SW-F and was denied after a hearing. The second was a pro se motion also challenging only warrants SW-D and SW-F. This motion was never heard by the court. But at a pretrial hearing the court asked Hachmeister's attorney to review the motion to determine if it was "appropriate for further prosecution." The court gave him eight days to file "something . . . address[ing] . . . [issues] that were raised by . . . Hachmeister." The attorney did not object to this deadline. Seven days after the deadline and five days before trial, the court held a hearing on another matter during which the attorney asked for an additional one or two days to file a third motion to suppress. The court granted this request.

On the first day of jury trial, Hachmeister filed his third motion to suppress, challenging all the warrants except SW-B. The district court noted the motion was filed "at the very, very last minute" and denied it as untimely, noting it had not yet reviewed the motion. The court characterized the motion as a request for reconsideration and informed the parties that despite its ruling it would review the motion and advise the parties if it changed its mind.

8

No further discussion of evidence suppression occurred until the State moved to introduce 108 pornographic images into evidence at trial. At that time, Hachmeister objected arguing the evidence was obtained as "a result of an illegal search and seizure." The court responded, "Your objection is noted for the record. My ruling is the same. Your objection is overruled." The court admitted the images.

*Preservation*

Hachmeister only challenged warrants SW-D and SW-F in his first two motions to suppress. While, as we have noted, the third motion challenged all warrants except SW-B, for reasons that are unclear the Court of Appeals construed it as also failing to challenge SW-C and SW-E. Based on this reading, the panel held Hachmeister failed to preserve any challenge to those warrants. *Hachmeister*, 2015 WL 8175905, at *3. Clearly, the panel erred in this regard, but there is another problem preventing appellate consideration of Hachmeister's challenges to SW-A, SW-C, and SW-E.

As the Court of Appeals correctly observed, the third motion to suppress was denied by the district court as untimely. It further noted Hachmeister offered no legal argument as to why that ruling was unreasonable or an abuse of discretion. 2015 WL 8175905, at *3. On review, Hachmeister maintains the panel erred by not construing the district court's decision as a ruling on the merits. Hachmeister offers no legal support for his position.

The district court made clear why it was denying the third motion, by stating: "And so my ruling, at this time, the motion is untimely and it has already been considered, the request for reconsideration is therefore denied. We will not reconsider it."

It continued,

> "After I read it, if I change my mind and decide that perhaps it is something that needs to be taken up, then I would advise counsel of the same, but this—this bridge was crossed almost a year ago and things have happened. We are literally at the—past the 11th hour before trial, so we're going to go ahead."

It is obvious the district court considered the third motion as a motion to reconsider its ruling on the first motion, which dealt exclusively with warrants SW-D and SW-F. As to the other warrants addressed for the first time in the motion, the court deemed the challenges untimely. Nothing in the record indicates the district court ever abandoned this view or ruled on the merits of the challenges to SW-A, SW-C, and SW-E.

Without a ruling from the district court on the merits, any substantive challenges to warrants SW-A, SW-C, and SW-E on appeal are not preserved. As a rule, issues not raised before the trial court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014); see Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35).

*SW-D and SW-F*

Despite some warrant mislabeling in Hachmeister's brief, it is clear his underlying challenge concerns SW-D, which he then contends tainted SW-F. Hachmeister argues SW-D lacked probable cause.

*Standard of review*

Generally, when reviewing a district court's denial of a motion to suppress, appellate courts use a bifurcated standard:  the district court's factual findings are

10

reviewed under a substantial competent evidence standard and the legal conclusions drawn from those findings are assessed de novo. *State v. Powell*, 299 Kan. 690, Syl. ¶ 3, 325 P.3d 1162 (2014). When material facts underlying defendant's claim are not disputed, "the issue is a question of law over which an appellate court has unlimited review." 299 Kan. at 700. But a more deferential standard is appropriate when reviewing a warrant application for probable cause.

When deciding whether an affidavit supplies probable cause for a search warrant,

"[a] judge . . . considers the totality of the circumstances presented and makes 'a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016) (quoting *State v. Hicks*, 282 Kan. 599, 613-14, 147 P.3d 1076 [2006]).

We have explained that,

"'When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. *This standard is inherently deferential*. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, *the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard*.'" (Emphasis added.) *Mullen*, 304 Kan. at 353 (quoting *Hicks*, 282 Kan. 599, Syl. ¶ 2).

11

Accordingly, a reviewing court determines the sufficiency of a search warrant affidavit from the four corners of the affidavit itself. See *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007). "[W]arrants and their supporting affidavits are interpreted in a commonsense rather than a hypertechnical fashion so as not to discourage police officers from submitting their evidence to a judicial officer before acting." *State v. Ames*, 222 Kan. 88, Syl. ¶ 2, 563 P.2d 1034 (1977). "Search warrants and their supporting affidavits are presumed valid, and one attacking their validity carries the burden of persuasion." *Ames*, 222 Kan. 88, Syl. ¶ 2.

*Discussion*

SW-D authorized a search of Sheila's home and Hachmeister's vehicle for various items including computers and data storage devices. During the search, the police seized the Lenovo laptop. Hachmeister argues the affidavit in support of SW-D lacked probable cause because it contained "no information about what evidence of criminal activity related to the murder is expected to be on the computers" and did not indicate the computer was "used . . . in some manner to facilitate the murder."

But the affidavit did contain sufficient facts implicating Hachmeister as a suspect in Sheila's death, including:

- Hachmeister changed his story as to what happened and failed a polygraph.
- He bragged to people how he killed his mother and told them the police think he was a "stone cold killer."
- His brother, Aaron, told Hachmeister that he asked mother's life insurance company to delay paying out Sheila's insurance benefits until the police ruled out Hachmeister as a suspect in Sheila's death.

12

- A local newspaper received an anonymous letter postmarked from Kansas City on November 12—two days after the conversation between Aaron and Hachmeister—claiming responsibility for the murder. The letter contained some information unknown to the public. Aaron told the police that Hachmeister was in Kansas City shortly before the letter was postmarked.

- Another local newspaper received an anonymous tip on November 15 stating that two men from Kansas City murdered Sheila. The tip further informed that the victim's sons were not the suspects.

As the panel stated, the evidence of the anonymous letter and tip might have been found on his computer or digital data storage devices. *Hachmeister*, 2015 WL 8175905, at *5. Accordingly, we hold that the facts averred in support of SW-D provided a substantial basis for the district court to conclude there was a fair probability evidence related to Sheila's murder might have been found on a computer within the possession of Hachmeister. Because SW-D was supported by probable cause, it did not taint warrant SW-F.

## NO VALID *APPRENDI* CHALLENGE

Hachmeister argues the district court violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by increasing the duration of his duty to register under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, based on the court's factual finding that several victims in his sexual exploitation of a child convictions were under 14 years old. This argument fails because lifetime sex offender registration is not punishment, so it falls outside the scope of *Apprendi*.

13

This court recently held lifetime sex offender registration does not constitute "punishment for purposes of applying the United States Constitution" and therefore could not violate the Eighth Amendment's prohibition against cruel and unusual punishment or § 9 of the Kansas Constitution Bill of Rights. *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016). In doing so, the court noted it derived this holding from caselaw addressing whether offender registration was punishment for the purposes of the Ex Post Facto Clause, but declared "there exists no analytical distinction between or among the different constitutional contexts in which the question of punishment versus a civil regulatory scheme can arise." 304 Kan. at 196. The defendant in *Petersen-Beard* challenged lifetime registration under the same version of KORA from which Hachmeister's lifetime registration requirement arises. See 304 Kan. at 208.

Because lifetime registration requirement is not "punishment" for constitutional purposes, it is not a "penalty" subject to *Apprendi*'s protections. See *State v. Charles*, 304 Kan. 158, 178-79, 372 P.3d 1109 (2016) (determining whether *Apprendi* applied in offender registration context by assessing whether registration requirement "qualifie[d] as punishment under the Due Process Clause"); *Petersen-Beard*, 304 Kan. at 196 ("[I]f KORA's lifetime sex offender registration requirement is punishment for either ex post facto or double jeopardy purposes, it must necessarily also be punishment for Eighth Amendment purposes. The reverse would likewise be true.").

Accordingly, the finding that Hachmeister's victims were under 14 years of age did not expose him to an increased penalty within the meaning of *Apprendi*. There was no constitutional violation when that fact was found by the court, rather than by a jury.

Affirmed.

14

\* \* \*

BEIER, J., dissenting:  Consistent with my votes in *State v. Buser*, 304 Kan. 181, 371 P.3d 886 (2016), *State v. Redmond*, 304 Kan. 283, 371 P.3d 900 (2016), and *Doe v. Thompson*, 304 Kan. 291, 373 P.3d 750 (2016), which dealt with the Ex Post Facto Clause, and in *State v. Peterson-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016), which dealt with the Eighth Amendment and Section 9 of the Kansas Constitution Bill of Rights, I respectfully dissent from the majority's holding that lifetime sex offender registration is not punishment. As a result, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), applies. The offender registration requirement could not be imposed on the defendant on the basis of a fact found by the district judge rather than the jury.

ROSEN and JOHNSON, JJ., join in the foregoing dissenting opinion.