No. 48,031

STATE OF KANSAS, *Appellee*, v. EUGENE M. STEWART, *Appellant*.

(548 P. 2d 787)

Opinion filed April 10, 1976.

*Robert W. Harris,* of Harris, Sheeley & Hills, of Kansas City, argued the cause, and was on the brief for the appellant.

*Philip L. Sieve,* chief deputy district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Eugene M. Stewart, was convicted of aggravated robbery (K. S. A. 1973 Supp. 21-3427) and aggravated battery (K. S. A. 1973 Supp. 21-3414). A codefendant, Michael Haygood, was charged jointly with the defendant under the aggravated robbery count and was acquitted at the trial. The evidence in

the case was virtually undisputed and essentially was as follows: On May 25, 1974, Haygood met with John Sanders to discuss a debt owed by Haygood to Sanders. Haygood and Sanders agreed that they would meet on the following evening at a private club in Kansas City at which time the debt would be paid. On the following evening, May 26, 1974, Haygood and Sanders met at the club and Haygood requested Sanders to follow him in his automobile to his sister's home at another location in Kansas City where Haygood indicated he would pick up money to pay Sanders. Upon arrival at their destination Haygood alighted from his car while Sanders remained in his automobile parked directly behind that of Haygood. As Haygood proceeded to enter one of the residences located in the area, he appeared to make a downward motion with his hands. Almost immediately a black man, later identified as the defendant Stewart, appeared at the passenger side of Sanders' car and exhibited a silver pistol. The man stated to Sanders, "Don't move, this is it." Sanders attempted to leave his automobile, at which time Stewart fired his weapon at Sanders. The shot passed through Sanders's coat and grazed his body. Sanders continued running to avoid his assailant who pursued him and continued to fire two or three shots at Sanders, all of which missed him. The weapon used in the assault was described by Sanders as an "owl head" model. Sanders was able to elude his pursuer and subsequently reported the incident to the police department. When Sanders returned to the scene of the assault his automobile was missing as was also the automobile of Haygood. These events which took place at about 7:30 p.m. on May 26 were the basis for the charge of aggravated battery.

Later that same evening at approximately 10:00 p.m., Sharon Sanders, the wife of John Sanders, was in the Sanders apartment with the couple's two young daughters. Sharon heard a knock at the door of the apartment, opened her apartment door, and observed a black man whom she later identified as the defendant, Eugene Stewart. Stewart told Mrs. Sanders that he had run out of gas and he needed to use a telephone. Mrs. Sanders stated that she did not have a telephone in the apartment, at which time the defendant pulled a gun from his clothing and pointed it toward Mrs. Sanders's daughter and forced his way into the apartment. Defendant ordered Sharon Sanders and her two daughters into the bedroom after making what appeared to be a signal to someone outside with the curtains in the bedroom. Shortly thereafter

two black males entered the apartment. Mrs. Sanders later identified one of the black males as Michael Haygood. While the three males were in the Sanders apartment, the defendant Stewart stated to Mrs. Sanders that they were waiting for her husband to arrive home, that he owed them money, that they had his car outside, and that they had tried to get him earlier in the evening but he had got away from them. The three men ransacked the Sanders apartment and when they left took various items of personal property. Following their departure Mrs. Sanders, not having a telephone and being in fear that the three men might return, did not report this incident to the police department until the following morning. These factual circumstances provided the basis for the charge of aggravated robbery filed against Stewart and Haygood.

It is clear from the evidence that an aggravated battery with a gun was committed against John Sanders and that the three men, who ransacked the Sanders apartment and removed personal property therefrom after pointing a gun at Mrs. Sanders, committed an act of aggravated robbery. The only issue in the case was the identification of the individuals who committed the crimes. At the trial the defendant Stewart was positively identified by John Sanders as his assailant and by Sharon Sanders as one of the armed robbers. There is no contention that the evidence presented at the trial was insufficient to sustain the convictions on both counts. The defendant Stewart has appealed to this court claiming that the trial court committed trial errors which denied to him his right to a fair trial.

The defendant first contends that the trial court erred in admitting into evidence three handguns found in the glove compartment of Haygood's automobile in which Stewart, Haygood, and a third man, Marlowe King, were arrested on May 31, 1974, five days after the aggravated battery and robbery occurred. The circumstances surrounding the defendant's arrest and the discovery of the three weapons are important. The evidence discloses that after Sanders reported the aggravated battery to the police department, he received information relevant to the identity of the person who had assaulted him on May 26. Sanders was able to come up with the name of the defendant Eugene Stewart. Sanders gave this information to detective James Parks of the Kansas City, Kansas, Police Department. Parks showed Sanders a number of photographs, one of which was that of defendant Stewart. Sanders identified Stewart as being the individual who attacked him on May 26.

Based upon this information the Kansas City detectives issued a pick-up order for Stewart on May 31, 1974. Police officers arrested Stewart, Haygood, and King in Haygood's vehicle. During the process of arresting these men the detectives searched their persons and found live rounds of ammunition of various calibers in the clothing of each of the three men arrested. Also at the time of the arrest a detective looked inside Haygood's car and observed that the door to the glove compartment of the vehicle was not fully closed. He was able to observe the presence of more than one revolver in the glove compartment. Following their arrest Stewart and his companions were taken to the Kansas City Police Department. Haygood's vehicle was impounded. On the following day June 1, 1974, the detectives went to the police garage for the purpose of inspecting the interior of the vehicle which had been impounded on the previous night. The officer testified that it was his intention to make an inventory of any articles found inside the car. At this time the gap in the glove compartment door was again observed. Through this gap a pistol in the glove compartment could be seen. A detective obtained a screwdriver and removed the latch of the door and proceeded to remove the three guns from the glove compartment. These three guns were admitted into evidence as state's exhibits No. 4, 6, and 7. Exhibit 7 was a .32-caliber revolver silver in color and which was described as an "owl head".

The defendant first argues that the three weapons were inadmissible because there was no evidence which showed that they were related to the crimes charged. It is true' that two of the three guns were never tied specifically to the defendant. However, there can be no question concerning the third gun—the silver owl-head pistol. John Sanders testified that his assailant had used a silver owl-head pistol. The evidence raised a reasonable inference that the silver owl-head pistol found in the Haygood vehicle was the same weapon used in the aggravated battery against Sanders. Furthermore immediately prior to the attack Sanders had been in the company of Haygood in whose car the weapons were found. Although the other two weapons were not shown to have any connection with the defendant Stewart, we find that any error committed in respect to their admission was harmless in view of the admissibility of the owl-head pistol.

The defendant next contends that the admission of the three weapons into evidence was erroneous because the police officer failed to comply with K. S. A. 1973 Supp. 22-2512 and because the

evidence was not sufficient to establish a proper chain of custody of the weapons. 22-2512 provides in pertinent part as follows:

"22-2512. Custody and disposition of property seized. Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial. The property seized may not be taken from the officer having it in custody so long as it is or may be required as evidence in any trial. The officer seizing the property shall give a receipt to the person detained or arrested particularly describing each article of property being held and shall file a copy of such receipt with the magistrate before whom the person detained or arrested is taken. . . ."

The state concedes that the police officers did not comply with 22-2512 because the officer seizing the property failed to give to the person arrested a receipt particularly describing each item of property being held and by the failure of the officer to file a copy of the same with the magistrate before whom the person arrested was taken. We agree with the state that the intent and purpose of the statute is to provide reasonable safeguards for the care and custody of property seized from persons detained or arrested and subsequently utilized as evidenced in criminal actions. Police officers should comply with the statute and under certain circumstances their failure to do so might well preclude the admission of seized articles into evidence at the trial. The failure to comply with the statute, however, does not as a matter of law prevent the admission of the seized articles into evidence where the articles are properly identified at the trial and where the evidence shows that the condition of the articles has not been altered and that they are in substantially the same condition as they were at the time they were seized. The record before us is undisputed that the police officer who seized the articles carefully marked each of the guns with his initials for purposes of identification and at the trial identified the weapons by his marks. There was never any real dispute that the weapons introduced as exhibits at the trial were not the same weapons seized by the police officer at the time of the arrest. Hence we find no error in the admission of the weapons on this ground.

The defendant also takes the position that the three weapons should not have been admitted into evidence because they were obtained as the result of an illegal search and seizure in violation of the defendant's constitutional rights. It is clear from the evidence that Haygood's vehicle was stopped by the police officers

following the issuance of a pick-up order for Stewart by the Kansas City detectives. Prior thereto John Sanders had positively identified the defendant Stewart as his assailant of May 26 and so informed the detectives. After impoundment of the vehicle on reasonable grounds the police officers conducted a good faith inventory search. There is ample evidence in the record from which the trial court could have concluded that the revolvers were in the plain view of the arresting officers since they were able to observe a weapon from outside the Haygood vehicle. (*State v. Boster*, 217 Kan. 618, 539 P. 2d 294.)

The defendant's next point of claimed error is that Counts 1 and 2 of the information charging aggravated battery and aggravated robbery were improperly joined for purposes of trial. It is contended that the two counts set out in the information charge two separate and distinct crimes involving two different victims, at two different locations, at two different times, and that no common scheme or plan connecting the crimes was ever established by the evidence. The controlling statute is K. S. A. 1973 Supp. 22-3202 (1) which provides as follows:

"22-3202. Joinder of charges and defendants. (1) Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In our judgment the trial court acted in full compliance with the statute by permitting the defendant be tried on both counts of the information at the same trial. It is clear from the record that both of the crimes charged were based upon acts or transactions connected together and constituting parts of a common scheme or plan. Obviously the defendant Stewart was out to get John Sanders —first at the time and place of the aggravated assault and later at the Sanders apartment. The aggravated battery took place at 7:30 p. m. and the aggravated robbery at 10:00 p. m. on the evening of May 26. At the Sanders apartment Stewart advised Mrs. Sanders that they had tried to get Sanders earlier in the evening but that he had got away from them and that they had the Sanders car outside. The connection is obvious. At the time of the aggravated battery Sanders's car was taken and was not found until several days later. Obviously the person who committed the aggravated robbery had knowledge of the aggravated battery committed earlier

in the evening and had possession of the victim's vehicle. In view of this evidence we have no hesitancy in holding that the two offenses could properly be joined in the same information and tried together at the same trial.

As his third point the defendant Stewart contends that the trial court erred in admitting into evidence state's exhibit No. 3 consisting of cartridges found on the defendant's person at the time of his arrest. The basis for claimed error is that there were discrepancies in the testimony of two police officers as to the caliber of the bullets found on the defendant's person. One officer testified to finding .32 caliber bullets in the search of the defendant. Another officer testified that the search of defendant yielded .38 caliber bullets. Although there was a conflict in the testimony such evidence was admissible. Any question arising from the difference in the testimony of the police officers went to the weight of the evidence, not to its admissibility. If the police officer who removed the cartridges from the defendant's person at the time of his arrest had executed the receipt required by K. S. A. 1973 Supp. 22-2512, confusion in the caliber of the bullets probably would not have arisen. However, we cannot say that the trial court committed reversible error in admitting the bullets into evidence.

The defendant's final point is that the trial court erred in denying the defendant's motion for a mistrial and in its failure to poll the jurors as to their knowledge of a newspaper article which appeared in a Kansas City newspaper on the evening of January 20, 1975, the first day of trial. On the morning of January 21 prior to the resumption of the trial, defendant's counsel moved for a mistrial and requested that the jury be polled to find out if any of the jurors had read the article. The trial judge refused to grant a mistrial or a poll of the jury on the basis that a poll would simply arouse their curiosity and cause them to run home and look at the article if they had not already seen it. The trial court had previously admonished the jury about reading newspaper accounts of the case. The newspaper article complained of was marked by the reporter as an exhibit and is before us on this appeal. In our judgment the newspaper article would have been prejudicial if read by the jurors. It referred to the fact that the defendant Stewart was then faced with a charge of first-degree murder in another case and that the chief deputy district attorney had stated to a reporter that the state intended to prove that Stewart and Haygood had a contract to kill Sanders. The article further referred to the fact that Stewart

had already been tried once in the murder case previously and that a codefendant had been convicted of first-degree murder two weeks ago. The state argues that the publicity was unintentional, that the contents of the article were repeated to the jury on the following day anyway, that no prejudice was shown since Haygood was acquitted by the jury. In our judgment the disposition of this point is governed by *State v. Smith,* 215 Kan. 34, 523 P. 2d 691, and *State v. Potts,* 205 Kan. 42, 468 P. 2d 74. In *Smith* we held that a motion to inquire during trial is not a proper method to determine if members of a jury are aware of prejudicial articles published by a newspaper during the trial. A similar situation was before the court in *Potts* where we stated that an inquiry pertaining to newspaper publicity during the trial may place prejudicial matter before the jury and create a basis for a mistrial and that the trial of a case should not be interrupted for inquiry on each article published by the news media. In *Potts* in refusing to reverse a criminal case on the grounds of prejudicial newspaper publicity we emphasized that no attempt was made at the hearing on the motion for a new trial to show that any member of the jury was aware that such an article had been published. The rule to be followed is that where the record on appeal fails to show that a single member of the jury was made aware of the publicity and when it does not appear the publicity was massive, pervasive or disruptive of the trial proceedings, no trial error appears for there is no showing that defendant was deprived of a fair trial. Here the record on appeal fails to show that a single member of the jury was made aware of the newspaper publicity or that the publicity was massive, pervasive or disruptive of the trial proceedings. In order to prove that members of the jury were aware of the newspaper article, counsel for the defendant could have requested a poll of the jury after it returned its verdict. In the alternative he could have subpoenaed the jurors on motion for a new trial to show that they had knowledge of the article. Under the circumstances we hold that there has been no showing that the defendant was deprived of a fair trial because of prejudicial newspaper publicity.

For the reasons set forth above the judgment of the district court is affirmed.