No. 67,723

STATE OF KANSAS, *Appellee,* v. DENNIS L. RICHARD, *Appellant.*

(850 P.2d 844)

Opinion filed April 16, 1993.

*M. Kristine Paredes,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Nola, Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Dennis L. Richard appeals his convictions and sentences for one count of aggravated kidnapping, one count of rape, and one count of battery. Defendant claims the trial judge (1) violated his Sixth and Fourteenth Amendment rights by allowing sheriff's officers to photograph defense witnesses, believed to be gang members, as they exited the courtroom following their testimony and by later refusing to poll the jury to determine the extent of the prejudice caused by the sheriff's officers' activity;

(2) suppressed evidence essential to the defense; (3) exhibited sympathy for the victim before the jury; and (4) improperly imposed sentence without consideration of the statutory policy and factors. Defendant also claims there was insufficient evidence for a rational factfinder to find defendant guilty of aggravated kidnapping beyond a reasonable doubt.

At approximately 2:00 p.m. on June 9, 1990, M.S., who had been celebrating her birthday in Pratt, Kansas, decided to drive to Wichita, find old friends, and continue her celebration. She stopped at a convenience store in Wichita at about 4:00 p.m.

M.S. saw someone she knew in the convenience store with a black female. The black woman invited M.S. to a party. After she arrived at the party, M.S. drank some wine coolers and allowed crack cocaine smoke to be blown into her mouth while she inhaled. M.S. became frightened and left the party. After leaving the party, she discovered that the money in her purse had been stolen. At approximately 8:30 p.m., she drove into a parking lot where Dennis Richard and Monte Summers, black males, were standing and asked them for directions to U.S. Highway 54.

There was conflicting evidence as to the events that followed. M.S. testified that Richard and Summers commandeered her vehicle, physically battered her, and forced her to perform oral sex twice. She testified she was raped by each of her captors. M.S. was injured when she jumped from the moving car. When the police arrived, they found her sitting on the center median of the street. M.S. had blood on her face, arm, and legs. She was wearing a halter top and had towels draped over her legs and stomach. M.S. had on no clothing underneath the towels.

Richard testified as follows. After he and Summers met M.S. at the convenience store, M.S. agreed to let him and Summers ride in the car with her. After riding around, M.S. agreed to have sex with him and Summers in exchange for cocaine. Subsequent to having consensual sexual intercourse, M.S. purposefully fell out of the car. Because he (defendant) possessed cocaine and M.S. was a semi-naked white woman, he panicked and left in her car.

Richard and Summers were arrested, and each was charged with one count of aggravated kidnapping, one count of rape, one

count of battery, and two counts of aggravated criminal sodomy. They were acquitted of the aggravated criminal sodomy charges but convicted of the aggravated kidnapping, rape, and battery charges. Both defendants were sentenced to life imprisonment for aggravated kidnapping, 15 years to life for rape, and 6 months for battery. The sentence for battery was ordered to run concurrently with the sentence for rape. The sentence for rape was ordered to run consecutively to the sentence for aggravated kidnapping. Richard appeals his convictions and sentences.

### Photographing Defense Witnesses

The sheriff's department had been informed that certain defense witnesses were affiliated with a local gang known as "Junior Boys." The sheriff's officers obtained permission from the trial court to photograph the individuals after they had testified and left the courtroom. The prosecution was aware of this, but the defense counsel were not.

One of the defense counsel became aware of the fact photographs were being taken after a defense witness, who had testified, bolted and was pursued by warrant officers in the hall outside the courtroom. Defense counsel objected and was informed that permission to photograph had been granted previously by the trial judge. Defense counsel then requested to poll the jury to ascertain if any of the jurors had observed or were aware of the activity in the hall. There is no evidence that any jurors were in the hallway when the photography was taking place. The request to poll the jury and a subsequent motion for a mistrial were denied. Defendant argues the hallway activities had a negative impact on the jury's determination of defense witness credibility and denied him a fair and impartial trial.

An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, a reviewing court presumes that the action of the trial court was proper. *State v. Gonzales*, 245 Kan. 691, 699, 783 P.2d 1239 (1989).

Neither the defendant's brief nor the record on appeal provides more than scant factual information regarding the activity to which defendant objects. There is no evidence that any juror was aware of the activity or, if aware, knew that defense witnesses were the

object of the photography, or, indeed, that the photography was related in any way to the trial. The fact that a photograph is taken does not, per se, indicate that the subject is a bad or unbelievable person. Richard's argument is based on the assumption, without evidence, that at least one juror saw some of the activity to which he objects. The assumption is unsupported by the record and is without merit.

### Refusal to Poll the Jury

Defendant's contention that he was denied a fair trial is also based on the unsubstantiated assumption that a juror saw and understood what was occurring in the hall outside the courtroom.

Under the circumstances, polling the jury during the trial as to what it had seen or not seen and its effect was not the solution. In *State v. Stewart*, 219 Kan. 523, 548 P.2d 787 (1976), a claim of error was made relative to the trial court's refusal to poll members of a jury during trial as to their knowledge of a prejudicial newspaper article which had been printed after the trial had commenced. The *Stewart* court noted that a motion to inquire during trial is not a proper method to determine if members of the jury are aware of prejudicial newspaper articles published during a trial. There was no evidence that any member of the jury was aware of or had read the newspaper article. The *Stewart* court noted that no post-trial effort was made by the defendant to show prejudice. No juror affidavits were filed to show the newspaper article had prejudiced the jury. No motion was filed to inquire of the jurors after the verdict but prior to their discharge, and there was no post-trial motion to subpoena jurors to see if a juror had knowledge of the article.

Here, the record on appeal fails to show that a single member of the jury was aware of what was occurring in the hallway. In order to prove that members of the jury were aware of what happened, counsel for the defendant could have (1) requested a poll of the jury after it returned its verdict, (2) obtained an affidavit from a juror showing the incident in the hall prejudiced the juror, then filed a motion for a new trial, or (3) subpoenaed the jurors to show that they had knowledge of the hallway activities. Under the circumstances, the trial court acted properly

in refusing to poll the jury during trial. There is no showing that Richard was deprived of a fair trial.

### Suppression of Evidence

A police officer testified in the State's case in chief that he had photographed the interior of M.S.'s vehicle. The photographs showed clothing and bloodstains. On cross-examination, defense counsel sought to introduce evidence that an empty syringe had been found in the vehicle. The trial court refused to allow the testimony. Defense counsel wanted the testimony to impeach M.S.'s anticipated testimony that she did not use drugs. The trial court ruled that, inasmuch as M.S. had not yet testified, there was no testimony to impeach. The door was left open to inquire of M.S. as to the syringe when the trial judge stated he would review the issue when M.S. testified. However, after M.S. had testified for the prosecution, she was not asked about drug usage, nor was the matter of the syringe again raised by the defense.

Richard contends the trial court erred by not allowing the syringe to be introduced during Detective Atteberry's testimony when the detective described the contents he processed from the interior of M.S.'s car. Defendant asserts that the heart of his defense embodies a drug deal which M.S. denied, viz., drugs for sex. Richard claims the syringe was extremely relevant to his theory of defense "because it confirms M.S.'s predisposition for drug usage" and supports his assertion that M.S. had agreed to trade sex for cocaine and, in addition, would serve to impeach M.S.'s denial that she was not involved with drugs.

The problem with Richard's claim that the evidence should have been introduced during Atteberry's testimony is that M.S. had not yet testified and there was nothing to impeach at that time. Richard also overlooks the fact that M.S.'s assailants had exclusive possession of her car from the time she jumped out of the vehicle until it was located by police and that the syringe could have been deposited in the car while the assailants were in possession of the vehicle.

Admission or exclusion of evidence is a matter of trial court discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would

take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991). Errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining do not require reversal when substantial justice has been done. *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986).

The admission of the syringe was sought for purposes of impeachment only, although on appeal defendant contends it would support the defendant's testimony that M.S. was a drug user who offered to trade sex for cocaine. Because defendant failed to question M.S. about drug usage or the syringe after she had testified for the prosecution, we conclude that if any error relative to the exclusion of evidence of the syringe occurred, it was harmless and does not constitute reversible error.

### Exhibition of Sympathy

Because the victim was crying while testifying before the jury, the judge walked over to the victim and handed her a box of Kleenex. During a recess which occurred before M.S. had completed her testimony, defense counsel moved for a mistrial. Richard contended the judge's act was more than one of common courtesy in that it indicated to the jury that the judge was sympathetic towards the witness. The trial judge denied the motion.

On appeal, Richard asserts the judge's action was not necessary to facilitate the continuation of the witness' testimony and that the prosecutor, bailiff, or court reporter could have attended to M.S. Richard argues the court's expression of sympathy not only enhanced the natural sympathy M.S.'s circumstances evoke, but validated it. He claims that the judge failed to remain neutral and concludes that if the judge wanted to help the victim, he should have called a short recess rather than exhibiting sympathy for the victim before the jury.

Certainly, a trial judge must remain impartial. Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding each alleged misconduct. In order to warrant or require the granting of a new trial, it must affirmatively appear that the conduct was of such a nature that

it prejudiced the substantial rights of the complaining party. *State v. Kendig*, 233 Kan. 890, 896, 666 P.2d 684 (1983).

Trials are frequently emotionally traumatic for witnesses who are personally involved in the events to which they are testifying. Acts of common courtesy should be encouraged, not discouraged. There is nothing in the record before us to indicate that the trial judge exceeded any boundaries or levels of judicial propriety in handing a tissue to a crying witness. We find no error or judicial impropriety.

### Sufficiency of Evidence

Richard argues there was insufficient evidence to prove that Richard "took or confined M.S. by force or threat," an essential element of the crime of aggravated kidnapping. In his argument, Richard attacks the credibility of M.S., emphasizing the different versions of the events she reported to police and testified to at trial, the evidence that her blood alcohol concentration was .172 after the incident, and the evidence that she had inhaled a hit of crack cocaine earlier in the evening.

When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Evans*, 251 Kan. 132, Syl. ¶ 1, 834 P.2d 335 (1992).

It was for the jury to determine the credibility of the witnesses, including M.S. In so doing, the jury could have concluded that M.S.'s initial version was affected by her hysteria (a condition reported by the officer questioning her) and embarrassment over her own actions on the day in question. Her blood being found on the defendants and her dangerous act of jumping from the moving vehicle added credence to her version of having been forcibly restrained and raped. Our review of all of the evidence, viewed in the light most favorable to the prosecution, convinces us that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Richard's contention is without merit.

### Sentencing

Absent special circumstances showing an abuse of discretion, an appellate court will not set aside a sentence that is within the

statutory limits. *State v. Webb*, 242 Kan. 519, 530, 748 P.2d 875 (1988). The defendant's principal complaint on appeal is that the sentencing judge failed to base the sentence upon a proper rationale, failed to follow the dictates of the sentencing statutes, and thereby failed to follow the law when exercising his discretion.

The trial court sentenced Richard and codefendant Monte Summers at the same time. When pronouncing the sentence the judge stated:

"With respect to each defendant, Dennis L. Richard and Monte W. Summers, it is the order, judgment and sentence of the Court that you be taken into custody by the Sheriff of Sedgwick County, by him delivered to the custody of the Secretary of Corrections to serve on Count 1, a term of life, on Count 2, a term of 15 years to life and on Count 3, a term of 6 months. Sentences on Count 3 will be concurrent with sentence on Count 2. Sentences on Count 2 are to be consecutive to terms on Count 1.

"The Court will state that this was as well proved case as the Court has tried. The victim during the course of testifying broke down three times on the stand. The Court had to recess the trial. The demeanor and action of the victim during the course of this trial was completely in accordance with her story and completely contrary to the story as told by the defendants in this case.

"The Court will consider the SRDC report when it is received."

Richard argues that the sentencing judge did not deal with him as an individual. Rather, he sentenced him and Summers in one brief statement which failed to reflect any individual considerations. Richard points out that the court did not acknowledge that he had no prior record; that he was only 17 years old at the time of the crime; that he was raised on the street; and that his father disappeared when he was only 3 years old and his mother, with whom he has a poor relationship, was in the Lansing penitentiary. He claims the court's comments failed to reflect any considerations at all except the fact that the judge believed the defendants were guilty.

Richard concludes that the judge's statement does not indicate that the judge was aware of the existence of the K.S.A. 21-4606 guidelines for sentencing. He argues that the harsh sentence imposed defies any goal of rehabilitation and that the judge, without any explanation, analysis, or consideration of the statutory factors, ran the sentences consecutively. He contends this was an abuse of discretion.

K.S.A. 21-4601 sets forth the legislative policy to be followed in the sentencing of criminal defendants and is to be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine, or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law. Although K.S.A. 21-4601 states the objectives of the corrections system, it does not require the sentencing judge to specifically consider those objectives as the judge must the factors in K.S.A. 21-4606. *State v. Webb*, 242 Kan. 519, Syl. ¶ 3.

K.S.A. 21-4606(2) provides that:

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

(a) The defendant's history of prior criminal activity;

(b) The extent of the harm caused by the defendant's criminal conduct;

(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

(d) The degree of the defendant's provocation;

(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(f) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

It is the sentencing judge alone who uses his or her discretion to determine the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, the public safety, and the statutory guidelines for sentencing. *State v. McDonald*, 250 Kan. 73, 82, 824 P.2d 941 (1992).

Each judge should develop his or her own personal technique for imposing sentence but should be sure to fulfill certain basic

requirements. The judge should attempt to personalize the sentence in such a way that the defendant realizes that it is suited both to him or her individually and to the offense committed. The judge should neither add personal condemnation of the offender nor underemphasize the seriousness of the offense. The sentence should be pronounced in a careful and understandable manner, giving the reasons for it. The judge's approach to the imposition of sentence can affect the whole response of the offender and any rehabilitative efforts to follow.

The statutory factors which the judge shall take into consideration in determining the penalty to be imposed are enumerated in K.S.A. 21-4606. Where the sentence exceeds the minimum, the legislature intended that the sentencing judge place on the record a detailed statement of facts and factors the judge considered. Failure to do so does not always indicate the sentencing court abused its discretion. Each case is to be considered on its facts. See *State v. McDonald*, 250 Kan. at 82-83.

Although the appellate courts have upheld sentences where the factors considered by the sentencing judge are not specifically enumerated, the appellate courts have repeatedly stated the better practice is for a trial judge to make a detailed record of the facts and factors considered in imposing sentence. See, *e.g., State v. Crispin*, 234 Kan. 104, 113, 671 P.2d 502 (1983). A sentencing court may be found to have substantially complied with K.S.A. 21-4606 when it incorporates into the record a presentence report which addresses the seven factors which must be considered pursuant to K.S.A. 21-4606(2). *State v. Webb*, 242 Kan. 519, Syl. ¶ 2.

The record is clear in this case that the sentencing judge neither took into consideration the individual characteristics, circumstances, needs, and potentialities as they applied to appellant, nor the criteria set forth in K.S.A. 21-4606. Judges cannot ignore the legislative policy and sentencing criteria set forth in the statutes when imposing a sentence. It is the duty of the judge to follow the legislative sentencing mandates. If a statutory procedure or guideline is to be followed, the judge's use of discretion is limited. Under these sentencing circumstances, there is a greater need for articulation by the judge of the statutory procedure or guidelines and the reasons for the judge's "discretion-

ary" decision. Discretion must be exercised, not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power. We sometimes speak of a decision which is contrary to the evidence or a statute as an abuse of discretion, but it is nothing more than an erroneous decision, or a judgment rendered in violation of law.

We have carefully reviewed the record and conclude that the trial court's total failure to consider the mandates of K.S.A. 21-4606 constituted an abuse of discretion, which requires that the sentence be set aside and that the defendant be resentenced in accordance with the proper statutory procedure. Based upon the facts and circumstances of this case, the sentences imposed upon Dennis Richard are vacated, and the case is remanded with directions that the defendant be resentenced in compliance with the provisions of K.S.A. 21-4606.

Convictions affirmed, sentences vacated, and case remanded for resentencing.