NOT DESIGNATED FOR PUBLICATION

No. 115,667

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAUNCEY L. BROWNFIELD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed August 25, 2017. Affirmed.

*Claire M. Hillman*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.


PER CURIAM: Chauncey Brownfield was convicted of aggravated battery after punching his victim in the face. Brownfield makes four arguments on appeal: (1) Kansas' aggravated battery statute is unconstitutionally vague, (2) the district court violated his right to a fair trial by failing to inquire into a prejudicial newspaper article published halfway through trial, (3) the district court erred by failing to give a lesser included offense instruction for reckless battery, and (4) the district court erred by including his juvenile adjudications in his criminal history. Three of these issues have been raised

1

before other panels of this court or the Kansas Supreme Court—the battery statute has withstood several constitutional challenges, the district court adhered to the proper procedure in handling the newspaper article, and juvenile adjudications do not need to be proven to a jury beyond a reasonable doubt. Finally, as to the failure to give a reckless battery instruction, we find that there was no factual basis for such an instruction. Accordingly, we affirm the district court judgment.

FACTUAL AND PROCEDURAL HISTORY

Brownfield and his wife were staying at the Budget Host Inn in Hutchinson, Kansas. Pratik Patel, an employee at the motel, asked them to leave because a lot of people were going in and out of their room. Patel also asked them to leave because the room was rented under someone else's name. Brownfield refused to leave. Brownfield asked for a refund, and Patel said he would give a full refund to the person who rented the room. Patel warned Brownfield that if he did not leave, Patel would call the police. Brownfield told Patel that he would "kick [his] ass" if Patel did not refund the money to Brownfield or allow Brownfield to stay in the room. When Patel took his phone out of his pocket to call the police, Brownfield began punching Patel's head. Patel fell, unconscious, to the ground. When Patel awoke, he realized his iPhone was gone.

When the police arrived at the Budget Host Inn, they saw that Patel's left eye was bruised and bleeding. Patel told police that the man who battered him took his cell phone. Patel described his assailant as a tall black male driving a silver car. The vehicle's tag number was on the registration of the hotel room. Patel was tracking his phone with the Find My iPhone app. The police followed the signal to a K-Mart parking lot. When police arrived at the K-Mart parking lot, they found a silver Mitsubishi Eclipse with a tag number that matched the one provided by Patel. The police found Brownfield in the K-Mart bathroom. Brownfield was not wearing the clothing that Patel described. However, police recovered a black, red, and white flannel shirt in the bathroom trash that matched

2

Patel's description. Brownfield had car keys for the Eclipse in the parking lot. The police found Patel's phone on the floor behind the passenger seat of the Eclipse. Later that day, Brownfield told police that he hit Patel, but he denied intentionally taking the phone. Patel positively identified Brownfield as the person who beat him.

Later, Patel went to the hospital. The physician assistant who examined him, Charles Lee Craig, noted the swelling and bruising around Patel's left eye. Craig conducted some tests and concluded that Patel had a "displaced fracture of the left orbital floor," typically referred to as an orbital blow out fracture. Craig explained that "an impact to the eye can often cause enough pressure inside the orbit for the bottom of the orbital floor to break." Craig said that "it would appear that [Patel] had a significant force to the eye." The fracture did not require surgery, although in some cases surgery is necessary to repair the damage. Patel reported that his injuries lasted about a month. He was able to return to work two days after the incident. The only remnant of the injuries is a small scar by Patel's eye.

The State charged Brownfield with aggravated robbery and aggravated battery. Brownfield elected to have a jury trial.

Before the jury came into the courtroom for the second day of the trial, the district court judge noted for the record that the Hutchinson News had run an article that caused him some concern. The article suggested that a man on trial for theft in Hutchinson had also been arrested for attempted murder in Salina. Defense counsel asked the judge to poll the jury regarding exposure to the article, but the judge did not bring the article to the jury's attention.

The jury found Brownfield guilty of aggravated battery. The jury could not reach a verdict on the aggravated robbery charge, so the court declared a mistrial on that crime.

3

The district court sentenced Brownfield to 29 months in prison. The State elected not to conduct a retrial on the aggravated robbery charge and dismissed it.

Brownfield appealed.

ANALYSIS

*The Kansas aggravated battery statute is not unconstitutionally vague.*

Brownfield's first argument is that K.S.A. 2015 Supp. 21-5413(b)(1)(B) is unconstitutionally vague. The statute defines aggravated battery as battery committed in a manner whereby great bodily harm "can be inflicted." K.S.A. 2015 Supp. 21-5413(b)(1)(B). Brownfield argues that the phrase "can be inflicted" is vague because "it gives no guidance as to the threshold of possible harm required under the statute, and thus does not give fair warning nor adequately guard against arbitrary enforcement."

Brownfield did not raise this issue below. But, he argues that this court can consider the issue for the first time on appeal because it involves only an issue of law and consideration of the issue is necessary to prevent the denial Brownfield's fundamental due process rights. We agree, so we will consider the issue. Whether a statute is constitutional is a question of law over which this court exercises unlimited review. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012).

Aggravated battery is defined as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted . . . ." K.S.A. 2015 Supp. 21-5413(b)(1)(B). This court has held on multiple occasions that the phrase "can be inflicted" in Kansas' aggravated battery statute is not unconstitutionally vague. *State v. Williams*, No. 108,394, 2015 WL 8174299, at *12 (Kan. App. 2015) (unpublished opinion) ("The phrase 'can be

4

inflicted' in Kansas' aggravated-battery statute has been challenged for vagueness many times before and has withstood every challenge."), *rev. granted* 305 Kan. 1258 (2017); see *State v. Kleber*, 2 Kan. App. 2d 115, 119, 575 P.2d 900 (1978); *State v. Bradford*, No. 115,008, 2016 WL 7429318, at *2 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* January 18, 2017; *State v. Wade*, No. 112,121, 2015 WL 5458557, at *3-4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1022 (2016).

Brownfield acknowledges the precedent set by the Court of Appeals' caselaw. However, he argues that the issue is still unsettled because the Kansas Supreme Court has never ruled on the constitutionality of the phrase "can be inflicted." Brownfield cites *State v. Cummings*, 297 Kan. 716, 305 P.3d 556 (2013), as evidence that the language is unconstitutional. *Cummings* presented a constitutional challenge to an endangering a child jury instruction. One of the elements of the instruction was "'[t]hat the defendant intentionally and unreasonably caused or permitted [K.H.] to be placed in a situation which there was a *reasonable probability* that [K.H.]'s life, body or health would be injured or endangered.'" 297 Kan. at 722. The court held that the phrase "reasonable probability" made the statute unconstitutional because it "create[d] an ambiguity for the jury as to the level of risk that constitutes criminal conduct." 297 Kan. at 729.

But the aggravated battery statute is distinguishable from the statute analyzed in *Cummings*. The aggravated battery statute does not require evidence that a person knowingly caused harm in any manner where there was a reasonable probability that great bodily harm, disfigurement, or death could be inflicted. The words "reasonable probability" do not appear in the aggravated battery statute. See K.S.A. 2015 Supp. 21-5413. The "great bodily harm, disfigurement or death can be inflicted" language in the aggravated battery statute is more analogous to the phrase "life, body, or health would be injured or endangered" as it appears in the child endangerment instruction. K.S.A. 2015 Supp. 21-5413(b)(1)(B); PIK Crim. 4th 56.010 (2014 Supp.). That language was not challenged in *Cummings*.

5

Accordingly, we find no reason to depart from the decisions of prior panels of this court that the phrase "can be inflicted" in Kansas' aggravated battery statute is not unconstitutionally vague.

*The district court did not violate Brownfield's right to a fair trial.*

Brownfield next argues that the district court's failure to interrogate the jury about the Hutchinson News article published midtrial (suggesting that a man on trial for theft in Hutchinson had also been arrested for attempted murder in Salina) violated his constitutional right to a fair trial. The State argues that Brownfield did not sufficiently preserve the issue for appeal, and that even if the issue was preserved, Kansas' caselaw is clear that district courts are prohibited from asking jurors about midtrial publicity absent evidence that misconduct has occurred.

The issue of the Hutchinson News article arose before the jury entered the courtroom for the second day of trial. The district judge said that if any jurors had seen the article then "without question there's going to be a mistrial." Defense counsel asked the district court to poll the jurors about whether they had read or seen anything about the case in the past day. The prosecutor replied that the jury is presumed to follow the court's instructions, and the court had admonished the jury not to read anything about the case. The court did not take any action, and the issue was not raised again.

The Kansas Supreme Court has held that "[a] motion to inquire during the trial is not a proper method to determine if members of a jury are aware of prejudicial articles published by a newspaper during the trial." *State v. Potts*, 205 Kan. 42, Syl. ¶ 3, 468 P.2d 74 (1970). The appropriate procedures to explore midtrial publicity were discussed in *State v. Stewart*, 219 Kan. 523, 548 P.2d 787 (1976), *overruled on other grounds by State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984). There, Eugene Stewart was charged with aggravated robbery and aggravated battery. After the first day of Stewart's trial, a

6

Kansas City newspaper published an article suggesting that Stewart was charged with first-degree murder in another case. Before the second day of trial began, defense counsel moved for a mistrial and asked that the jury be polled to determine if any jurors had read the article. The district judge refused, noting that polling the jury would arouse their curiosity and also noting that the jury had been admonished from reading newspaper accounts of the case. On appeal, Stewart argued that the district court erred by failing to inquire about the article. The Kansas Supreme Court noted that "the newspaper article would have been prejudicial if read by the jurors." 219 Kan. at 529. But, it held that the district court did not err because a motion to inquire midtrial is not the appropriate method to determine if members of the jury were prejudiced. The court explained:

> "The rule to be followed is that where the record on appeal fails to show that a single member of the jury was made aware of the publicity and when it does not appear the publicity was massive, pervasive or disruptive of the trial proceedings, no trial error appears for there is no showing that defendant was deprived of a fair trial." 219 Kan. at 530.

The *Stewart* court suggested that "[i]n order to prove that members of the jury were aware of the newspaper article, counsel for the defendant could have requested a poll of the jury after it returned its verdict." 219 Kan. at 530. Alternatively, Stewart "could have subpoenaed the jurors on motion for a new trial to show that they had knowledge of the article." 219 Kan. at 530.

This case is analogous to *Stewart*. Brownfield and Stewart were charged with the same crimes. Both were subjects of articles, published before the second day of their trials, suggesting that they were being prosecuted for murder or attempted murder. Both articles were characterized as prejudicial by the courts. And, both defendants asked the district court to poll the jury regarding exposure to the newspaper articles. However, like in *Stewart*, Brownfield presents no evidence that any jurors actually read the article. This court cannot find error absent evidence that jurors were aware of the publicity.

7

Brownfield "recognizes that this Court is bound to the extent that the Kansas Supreme Court has prohibited inquiry regarding mid-trial publicity." However, he asserts that the caselaw should be "reversed or limited." He then explains how other jurisdictions handle the issue, noting that "Kansas appears to be the only jurisdiction to hold that a midtrial interrogation of a jury is a *per se* improper method of determining whether a jury was aware of publicity." The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Brownfield presents no evidence that the Kansas Supreme Court is departing from its previous holdings on this issue. Therefore, the district court did not err in its handling of this issue.

*The district court did not err by failing to give a lesser included offense instruction for reckless aggravated battery.*

Brownfield argues that the district court erred by failing to give a lesser included offense instruction for reckless aggravated battery. The State charged Brownfield with aggravated battery causing great bodily harm, as defined by K.S.A. 2015 Supp. 21-5413(b)(1)(A), and the district court instructed the jury on this crime. The court also instructed the jury on the lesser included offenses of aggravated battery causing bodily harm, as defined by K.S.A. 2015 Supp. 21-5413(b)(1)(B), and battery, as defined by K.S.A. 2015 Supp. 21-5413(a)(1). The jury convicted Brownfield of the lesser included offense of aggravated battery causing bodily harm.

Brownfield did not request an instruction on reckless aggravated battery at trial. If a party fails to object to the giving of or failing to give a jury instruction, we may only consider whether the giving or the failure to give the instruction is clearly erroneous so that it affects a party's substantial rights. K.S.A. 2015 Supp. 60-251(d)(2). We use a two-step process in determining whether the challenged jury instruction is clearly erroneous. First, we must determine whether there was any error at all by considering whether the

8

subject instruction was legally and factually appropriate based on an unlimited review of the entire record. If we find that the newly requested instruction was legally and factually appropriate, we must then decide whether we are firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming error in the instructions—in this case Brownfield—has the burden to prove the degree of prejudice necessary for reversal. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

Our review is unlimited when determining whether an instruction is legally appropriate. *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The Kansas Supreme Court has held that reckless aggravated battery is a lesser included offense of aggravated battery because it is a lesser degree of the same crime. *State v. McCarley*, 287 Kan. 167, 177-78, 195 P.3d 230 (2008). Thus, the instruction was legally appropriate.

Next, we must determine whether the instruction was factually appropriate. To do this, we examine "whether there was sufficient evidence, viewed in the light most favorable to the defendant or requesting party, that would have supported the instruction." *Plummer*, 295 Kan. 156, Syl. ¶ 1. The district court is required to instruct the jury on a lesser included offense if "there is some evidence which would reasonably justify a conviction of" the lesser included crime. K.S.A. 2015 Supp. 22-3414(3). The parties dispute whether a reckless aggravated battery instruction would have been factually appropriate. Accordingly, we examine the facts to see if they would support such an instruction.

Brownfield was convicted of aggravated battery causing bodily harm, which K.S.A. 2015 Supp. 21-5413(b)(1)(B) defines as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted . . . ." Brownfield argues that the district court should also have instructed the jury on reckless aggravated battery. Reckless aggravated

9

battery is defined as "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted . . . ." K.S.A. 2015 Supp. 21-5413(b)(2)(B). There is only one difference between the statutes—Brownfield's crime of conviction required intentional conduct; his requested instruction required reckless conduct. So we must determine whether there was some evidence that would support Brownfield's argument that he was acting recklessly instead of knowingly.

"The mental state of recklessness is incompatible with a mental state where a person acts with knowledge, willfulness, or purposefulness, meaning a person cannot act both intentionally and recklessly with respect to the same act." *State v. O'Rear*, 293 Kan. 892, 903, 270 P.3d 1127 (2012). Here, Brownfield testified that he intentionally struck Patel. Brownfield's intent, in his own words, was to "kick [Patel's] ass" and "beat the shit out of him." Because Brownfield acted intentionally, a reckless aggravated battery instruction would not be factually inappropriate.

That is not to say that a reckless act would never be a lesser included offense to an intentional act. There are some situations in which a reckless aggravated battery instruction would be a factually appropriate lesser included offense of aggravated battery causing bodily harm. For example, in *State v. Ochoa*, 20 Kan. App. 2d 1014, 895 P.2d 198 (1995), defendant Jose Ochoa was convicted of aggravated battery after shooting a gun and striking several people. Ochoa argued that he did not aim at the persons who were shot, rather, he "claim[ed] he was shooting into the air, seeking only to frighten the group." 20 Kan. App. 2d at 1015. The Court of Appeals held that the jury should have been given an instruction for reckless aggravated battery because Ochoa's testimony that he did not intend to shoot anyone provided sufficient evidence to support a conviction for that crime. 20 Kan. App. 2d at 1020-21.

10

*Ochoa* is distinguishable from situations where, as here, there is no evidence that the defendant was aiming at something other than the victim. For example, in *State v. Graham*, No. 94,777, 2006 WL 2043219, at *3 (Kan. App. 2006) (unpublished opinion), the Court of Appeals held that a reckless aggravated battery instruction was not warranted where the defendant, Crystal, "stabbed [the victim] repeatedly with a filet knife when he tried to leave" and then "proceeded to follow him out of the house and down the street threatening to stab him again if he did not stop." The court held that such intentional conduct was "not an instance where [Crystal] waved the knife around injuring [the victim] by chance." 2006 WL 2043219, at *3; see *Tucker v. State*, No. 89,661, 2004 WL 90056, at *5 (Kan. App. 2004) (unpublished opinion) (refusing to give reckless aggravated battery instruction where the evidence showed that the defendant deliberately shot the victim, and there was no evidence that the defendant was aiming at something other than the victim). Likewise, there is no evidence that Brownfield swung his fists in the vicinity of Patel in conscious disregard of the risk. All of the evidence shows that Brownfield intentionally struck Patel.

Brownfield argues that even if he intended to strike Patel, he did not intend to cause the specific resulting harm. He cites *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), in support. In *Hobbs*, the Kansas Supreme Court determined whether the use of the word "knowingly" in Kansas' aggravated battery statute "applies to both the defendant's underlying act and its specific resulting harm." 301 Kan. at 207. The court held that the mental state applied to both elements of the statute. This means that the accused acts knowingly "when he or she was aware that his or her conduct was reasonably certain to cause the result." 301 Kan. at 211.

The fact that *Hobbs* requires the State to prove that the defendant intends to cause bodily harm would be relevant if Brownfield was challenging the sufficiency of the evidence underlying his conviction as was Hobbs. But he is not. The *Hobbs* holding does not support Brownfield's argument that the district court should have given a reckless

11

aggravated battery instruction. The Supreme Court was careful to note that "[t]his does *not* mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." (Emphasis added.) 301 Kan. at 211.

After the *Hobbs* decision, this court addressed the same argument made by Brownfield in *State v. Frazier*, No. 112,368, 2016 WL 1545628 (Kan. App. 2016) (unpublished opinion), *rev. denied* May 22, 2017. Jeremy Frazier similarly argued that "the record 'would have clearly supported a finding that [he] committed battery, but was reckless with regard to great bodily harm.'" 2016 WL 1545628, at *8. Frazier had punched and choked his victim. The Court of Appeals held that a reckless aggravated battery instruction was not appropriate because "Frazier's conduct was the very definition of knowing conduct, which occurs 'when such person is aware that such person's conduct is reasonably certain to cause the result.'" 2016 WL 1545628, at *9 (quoting K.S.A. 2011 Supp. 21-5202[i]). The court added that "[t]he fact that [Frazier] may not have intended the precise harm or result that occurred does not make the act any less intentional and certainly does not demote the behavior to reckless conduct." 2016 WL 1545628, at *9. We find the same to be true of Brownfield's conduct. He may not have intended the specific orbital fracture that Patel suffered, but he intentionally hit Patel with such "significant force to the eye"—in the words of the treating physician's assistant—that great bodily harm or disfigurement was a reasonably foreseeable result.

We find that an aggravated reckless battery instruction was not factually appropriate, so the district court did not err by failing to give the instruction. Because there was no error, it is unnecessary to reach the next step of the analysis—whether the jury would have reached a different verdict had the instruction been given.

12

*The district court did not err by including Brownfield's juvenile adjudications in his criminal history score.*

Brownfield's final argument is that the district court erred by enhancing Brownfield's sentence based on prior juvenile adjudications that were not proven to a jury beyond a reasonable doubt. Brownfield acknowledges that this court is bound by the Kansas Supreme Court's ruling in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002). Brownfield merely wishes to preserve this issue for possible federal review. The *Hitt* court held that "[j]uvenile adjudications need not be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the [Kansas Sentencing Guidelines Act]." 273 Kan. at 236. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Meyer*, 51 Kan. App. 2d at 1072. Thus, this court cannot find that the district court erred by failing to submit Brownfield's juvenile adjudications to a jury.

Affirmed.